FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 AUG 30  P 2: 02

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHELL WESTERN E & P, INC. | * | CIVIL ACTION |
| VERSUS | * | NO. 99-3447 |
| THE DIA-LOG COMPANY, | * | SECTION "J" |
| WEDGE WIRELINE, INC., DILO, INC. | | |
| AND AIR LIQUIDE AMERICA | * | JUDGE CARL J. BARBIER |
| CORPORATION D/B/A | | |
| AL AMERICA HOLDINGS, INC. | * | MAGISTRATE "2" |
| | | MAG. JUDGE JOSEPH C. |
| | * | WILKINSON, JR. |
| *    *    *    *    *    *    * | | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO UNENFORCEABILITY OF INDEMNITY PROVISION UNDER TEXAS LAW

MAY IT PLEASE THE COURT:

Defendants DiLo, Inc. ("DiLo") and Air Liquide America Corporation ("ALAC") submit this Reply Memorandum in support of their for summary judgment that the indemnity provision under which plaintiff Shell Western E & P, Inc. ("Shell Western") seeks its defense costs is unenforceable under Texas law. Shell Western filed an Opposition to DiLo/ALAC's Motion on August 21, 2001 to which DiLo/ALAC wish to reply.[1] Oral argument is set on the motion for August 29, 2001 at 9:00 a.m.

---

[1] Shell Western's Opposition filed August 21, 2001 did not contain a response to DiLo/ALAC's statement of uncontested material facts as required by LR56.2E. Shell Western claims to have belatedly filed such a response almost a week later on August 27, 2001. To the extent this late response does not satisfy this rule, all the material facts in DiLo/ALAC's statement are "deemed admitted." See LR56.2E.

## I.  COLLATERAL ESTOPPEL DOES NOT APPLY.

In its Opposition, Shell Western continues to argue that collateral estoppel applies as to the issue of which law should govern the contract at issue between two Texas companies, issued in Texas, and governing operations throughout the continental United States and Alaska. However, collateral estoppel is not applicable for several reasons.

### A.  DiLo's Claim in the Underlying Case Was Settled on Appeal.

While Shell Western discusses the progress of the underlying case in the district court in its Opposition, it neglects to mention that DiLo specifically appealed this Court's ruling that the contract was "maritime in nature" and that DiLo's intervention claim was settled while its appeal was pending in the United States Fifth Circuit Court of Appeals.  As the attached Unopposed Motion to Withdraw Appeal clearly demonstrates, DiLo moved to withdraw its appeal as "[t]he parties to this appeal **have amicably settled** all issues on appeal."  See Exhibit A (emphasis added).  Moreover, the motion was "unopposed."  Id.  (emphasis in original).  Because DiLo's claim in the underlying case was settled on appeal, no ruling regarding that claim has issue preclusion or collateral estoppel effects.  See State of Arizona v. State of California, 530 U.S. 292, 414 (2000); 18 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE Jurisdiction § 4443 n.21 accompanying text (1981); Associates Capital Servs. Corp. v. Loftin's Transfer & Storage Co., 554 F.2d 188, 189 (5th Cir. 1977) (per curiam).

2

**B.**    **The Ruling Was Not "Critical" and  "Necessary" to Support the Prior Judgment.**

Shell Western also argues that this Court's previous alternative ruling that the contract was maritime in nature "was necessary to support this Court's Judgment."  See Shell Western Opposition at 3.  Shell Western again neglects to mention that this Court's ruling regarding the maritime nature of the contract was **an alternative ruling** and therefore was not "necessary" to the previous judgment and should have no collateral estoppel effect on that basis as well.  As the Fifth Circuit has held, collateral estoppel does not apply unless the issue presented was a "critical and necessary part" of the prior judgment.  Society of Separationists, Inc. v. Herman, 939 F.2d 1207, 1213 (5th Cir. 1991).  This Court's prior alternative ruling that the contract was "maritime in nature" made in a footnote to a 16-page opinion without any citation to any supporting legal authority was not "necessary" to that ruling nor was it "critical" to that ruling.

**C.**    **Neither Wedge Wireline, Inc. nor ALAC Was a Party to the Prior Proceeding.**

Collateral estoppel is "an equitable doctrine which should be 'applied only when the **alignment of the parties** and the legal and factual issues raised warrant it.'"  Copeland v. Merrill Lynch & Co., 47 F.3d 1415, 1423 (5th Cir. 1995) (quoting Nations v. Sun Oil Co. (DELAWARE), 705 F.2d 742, 744-45 (5th Cir. 1983) (en banc)(emphasis added)).  It applies to issues that are validly determined "**between two parties**."  United States v. Shanbaum, 10 F.3d 305, 311 (5th Cir. 1994) (emphasis added).

In Shell Western's Opposition, it misleadingly collectively refers to DiLo and ALAC (which are two distinct legal entities) as "DiLo" and then argues that collateral estoppel should be enforced against "DiLo" based on its presence in the underlying case.  However, Shell

3

Western offers no argument as to why ALAC should be subject to collateral estoppel when it was not even a party to the underlying case.  Similarly, Wedge Wireline, Inc. has adopted DiLo/ALAC's motion for summary judgment on this issue, and Shell Western has offered no argument as to why collateral estoppel should be enforced against Wedge which also was not a party to the underlying case.

D.     **Special Circumstances Exist that Would Make it Unfair to Apply the Doctrine.**

Finally, special circumstances do exist which would make it unfair to apply the collateral estoppel doctrine in this case even if all the other factors were met.  DiLo moved to dismiss Shell Western's claims against it in the instant suit, claiming that it was a compulsory counterclaim which Shell Western should have asserted against it in the underlying suit.  Shell Western opposed this motion and stated the two claims "did not both 'arise' from the Shell/Dia-Log contract."  See Shell Western's Surreply Memorandum at 4 (filed Apr. 10, 2000; Docket No. 19). Shell Western wants to have this action relate to the prior action when it suits its purposes and not relate to it when it does not.  Shell Western should not be allowed to proceed with this separate action against DiLo, but nevertheless hold DiLo bound to rulings from the first action. These special circumstances make it unfair to apply the collateral estoppel doctrine in this case.

4

## II.  DILO HAS ASSERTED THAT TEXAS LAW APPLIES TO SHELL WESTERN'S CLAIM FOR MORE THAN TWO YEARS.

Shell Western implies that DiLo raised the issue of application of Texas law for the first time in its Motion for Summary Judgment.[2]  See Shell Western Opposition at 4.  Such an argument is belied by Shell Western's own exhibits.  Exhibit J to Shell Western's Opposition at Exhibit A is a **July 14, 1999** facsimile correspondence from counsel for DiLo responding to correspondence from Arthur Crais of Shell Oil Company on which Shell Western's counsel were copied via facsimile.  See Exhibit B.  This correspondence clearly set forth DiLo's position at that time, which remains to this day, that (1) the blanket order at issue was an executory contract assumed by Wedge Wireline; (2) DiLo was relieved from any obligation under the contract as it had been prejudiced by Shell Western's late notice regarding its request for defense and indemnity; and (3) **the indemnity provision is unenforceable as a matter of Texas law.**

Neither Shell Western directly or through counsel ever directly responded to this correspondence and its assertion that Texas law applied to Shell Western's claims.  Rather it was Shell Western that waited more than two years until its Opposition was filed on **July 31, 2001** to first articulate any argument as to why Texas law should not apply to the contract between Texas companies issued to a Houston address.

---

[2]Contrary to Shell Western's assertion, both Louisiana law and Texas law could apply to different aspects of the same case, given the states' differing dominant interests, based on the doctrine of depecage.  See Calhoun v. Yamaha Motor Corp., U.S.A., 216 F.3d 338, 342 & n.7 (3d Cir.) (affirming the district court's use of depecage to apply both Pennsylvania and Puerto Rico law in the same case under a general maritime law choice-of-law analysis), cert. denied, 121 S. Ct. 627 (U.S. 2000), reh'g denied, 121 S. Ct. 797 (U.S. 2001).  Louisiana choice-of-law analysis similarly allows for depecage.  See LA. CIV. CODE art. 3515 Revision Comments 1991 (d).

III.    **TEXAS LAW SHOULD BE APPLIED TO THE CONTRACT.**

   A.    **The Contract Was to Be Performed Throughout the Continental United States and Alaska.**

   Shell Western contends that Louisiana is the "place of performance" of the contract at issue. See Shell Western Opposition at 5. This assertion neglects to note that the Blanket Order covered all of "Buyer's **North American operations** as operated by Shell Offshore Inc., Shell Western E&P Inc. and Shell Frontier Oil & Gas Inc." See Shell Western Motion for Summary Judgment, Exhibit A, at 000221 (emphasis added). Moreover, the Blanket Order specifically contemplated performance in the following areas: Mid-Continent, Gulf Coast, Alaska, Rocky Mountain, and California, including specifically the Kernridge Division presumably in California. See id. at 000222, 000248-000249. Thus, the contract was to performed throughout the continental United States and Alaska.

   B.    **The Contract was Executed in Texas.**

   Moreover, Shell Western attempts to distinguish the numerous cases cited by DiLo/ALAC as being only applicable to insurance policies. See Shell Western Opposition at 5. However, as DiLo/ALAC has previously stated, the Fifth Circuit has held that Louisiana law applies similarly to indemnity provisions as to insurance policies as to certain issues.[3] See Laird v. Shell Oil Co., 770 F.2d 508, 511-12 (5th Cir. 1985). As noted by Shell Western, Judge Parker in Resure, Inc. v. Chemical Distributors, Inc., 927 F. Supp. 190, 192 (M.D. La. 1996), aff'd, 114 F.3d 1184 (5th Cir. 1997), ruled that "Louisiana law consistently applie[s] the law of the state in

---

[3]One notable difference is that Louisiana law, as does the general maritime law, strictly construes contractual indemnity provisions against the indemnitee but strictly construes insurance provisions against the insurer.

6

which the insurance policy was executed." Shell Western Opposition at 5. Shell Western offers

no argument as to why the law of Texas, the place of execution of this contract for which

performance was to be throughout the continental United States and Alaska should not apply

under either Louisiana or general maritime choice-of-law analysis.

## IV.    THE ALLEGED SOPHISTICATION OF THE DIA-LOG COMPANY IS IRRELEVANT UNDER TEXAS LAW.

Shell Western argues that The Dia-Log Company had actual notice of the indemnity

provision because of its alleged sophistication. However, such an argument is contrary to Texas

law in this area. For example, in U.S. Rentals, Inc. v. Mundy Service Corp., 901 S.W.2d 789,

792 (Tex. App. Houston 14th Dist.1995), the court stated that Texas Supreme Court cases

> direct that the conspicuousness of an indemnity agreement be established by objective factors on the face of the agreement, **rather than to vary according to the subjective sophistication and experience of each party** against whom the agreement may be asserted.

(emphasis added) (citing Fisk Elec. v. Constructors & Assocs., 888 S.W.2d 813 (Tex. 1994);

Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505 (Tex. 1993)).

Shell Western attempts to distinguish U.S. Rentals by contending that it conflicts with an

earlier opinion of the Texas Supreme Court. However, the Texas Supreme Court has more

recently confirmed that an objective standard, without regard to the particularities of the party at

issue, applies as to conspicuousness of language. In Cate v. Dover Corp., 790 S.W.2d 559, 560

(Tex. 1990), the Texas Supreme Court stated as follows:

> Admittedly, an ambiguity is created by the requirement that disclaimer language be conspicuous to "a reasonable person *against whom it is to operate*." Comment 10 [to Texas Business and Commercial Code § 1.201(10)], however, clearly **contemplated an objective standard**, stating the test as "whether attention can reasonably be expected to be called to it."

7

(italic emphasis in original; other emphasis added).

In evaluating a similar argument regarding the sophistication of the parties, a Texas appeals court has applied the holding of <u>Cate</u> specifically to an indemnity provision, stating "the Supreme Court has spoken directly to this issue and found that only **an objective analysis** is required." <u>Douglas Cablevision IV, L.P. v. Southwestern Elec. Power Co.</u>, 992 S.W.2d 503, 509 (Tex. App. Texarkana 1999) (emphasis added); <u>see also</u> <u>Griffin Indus., Inc. v. Foodmaker, Inc.</u>, 22 S.W.3d 33, 37 (Tex. App. Houston 14th Dist. 2000) ("The indemnity clause must be 'conspicuous' under the objective standard defined in the Uniform Commercial Code.") (citing TEX. BUS. & COM. CODE ANN. § 1.201(10) (Vernon 1994); <u>Littlefield v. Schaefer</u>, 955 S.W.2d 272, 273 (Tex. 1997)).

Therefore, Shell Western's argument regarding the alleged sophistication of The Dia-Log Company is irrelevant under Texas law.

## V.   <u>SHELL WESTERN HAS NOT ESTABLISHED THAT DIA-LOG HAD ACTUAL NOTICE.</u>

Texas law is clear that Shell Western has the burden of establishing that Dia-Log has actual notice. Shell Western's only argument that Dia-Log had actual notice is that "DiLo has admitted that Dia-Log procured insurance with SWEPI names as an additional assured in compliance with its obligations under the SWEPI/Dia-Log Contract." Shell Western Opposition at 11 and Exhibit K. However, Exhibit K clearly shows that DiLo/ALAC produced an insurance policy at issue "subject to this objection": "DiLo/ALAC object to this Interrogatory to the extent it assumes they and/or The Dia-Log Company had a duty to Shell Western." <u>See</u> Exhibit K, Response to First Supplemental Interrogatory No. 1 at 2. Shell Western cannot be allowed to use

8

documents produced subject to an objection to prove a point which was the specific subject matter of the objection.

## VI.    SHELL WESTERN HAS NOT SHOWN THAT THE DIA-LOG COMPANY BREACHED ANY OBLIGATION TO PROVIDE IT WITH INSURANCE.

Finally, Shell Western has not produced any evidence that The Dia-Log Company breached any obligation to provide it with insurance.  In fact, Shell Western has attached as part of Exhibit L *in globo* the insurance policy under which it claims that The Dia-Log Company provided it coverage.  See Shell Western Opposition at 11.  DiLo/ALAC are at a loss as to how Shell Western contends that The Dia-Log Company breached its alleged obligation to provide Shell Western with insurance when Shell Western has in its hands the insurance policy that it claims The Dia-Log Company secured providing Shell Western coverage.

## VII.    CONCLUSION

For the foregoing reasons, this Court should grant DiLo/ALAC's motion for summary judgment as to the unenforceability of the indemnity provision under Texas law, thereby dismissing with prejudice Shell Western's claims against them with prejudice and at Shell Western's costs.

Respectfully submitted,

*Martha Y. Curtis*

**JAMES M. GARNER #19589 — T.A.**
**MARTHA Y. CURTIS #20446**
**JOHN T. BALHOFF #24288**
SHER GARNER CAHILL RICHTER KLEIN
  McALISTER & HILBERT, L.L.C.
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana 70112
**ATTORNEYS FOR DILO, INC. and**
**AIR LIQUIDE AMERICA CORPORATION**

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded by facsimile or hand

delivery to all counsel of record, this 28th day of August, 2001.

Martha Y. Curtis

**MARTHA Y. CURTIS**

10

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**

MAR - 2 2001

CHARLES R. FULBRUGE III
CLERK

NO. 99-31375

IN RE: FALCON INLAND

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NO. 97-360-J

## UNOPPOSED MOTION TO WITHDRAW APPEAL

DiLo, Inc. and Constitution State Service Company, Appellants in this appeal of the

Judgment in the case of *In The Matter of Falcon Inland, Inc. and Falcon Services*

*Company, Inc. of Delaware Petitioning for Exoneration from or Limitation of Liability* C/A

No. 97-0360, Section J,  United States District Court For the Eastern District of Louisiana

move this Court pursuant to Fed. Rul. App. Proc. Local Rule 42.1 to withdraw their appeal.

The parties to this appeal have amicably settled all issues on appeal and this motion is

unopposed.



EXHIBIT

A

Respectfully Submitted:

HOFFMAN, SIEGEL, SEYDEL, BIENVENU,
CENTOLA & CORDES (APLC)

DONALD A. HOFFMAN (#6894)
WILLIAM M. BLACKSTON (#22004)
650 Poydras Street, Suite 2100
New Orleans, LA 70130-6121
Telephone: (504) 523-1385
ATTORNEYS FOR INTERVENORS, DILO, INC.
FORMERLY KNOWN AS DIA-LOG, INC. AND
CONSTITUTION STATE SERVICE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to counsel of record by depositing a copy of same in the U.S. Mail, postage prepaid and properly addressed, and by facsimile, this 2nd day of March, 2001.

```
      -----------------
         No. 99-31375
         CA 97-360 J
```

In Re: In the Matter of: FALCON INLAND INC;
FALCON SERVICE COMPANY, INC OF DELAWARE for
exoneration from or limitation of liability

```
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    MAR - 6 2001
         MAR - 6 2001

LORETTA G. WHYTE
       CLERK
```

```
      -----------------------
```

FALCON INLAND INC; FALCON SERVICE COMPANY,
INC OF DELAWARE

          Petitioner - Appellees

    v.

DILO INC, formerly known as Dialog Inc, formerly known as
Constitution State Service Company

          Intervenor Plaintiff - Appellant

    v.

BAKER HUGHES OILFIELD OPERATIONS, INC

          Third Party Plaintiff - Appellee

    and

SHELL WESTERN E&P INC

          Third Party Defendant - Appellee


                    ENTRY OF DISMISSAL


        Pursuant to appellant's motion the appeals are dismissed this

2nd day of March, 2001, see FED. R. APP. P. 42(b).


                         CHARLES R. FULBRUGE III
                         Clerk of the United States Court
                         of Appeals for the Fifth Circuit

                    By:  _Claudia Farrington_
                         Claudia Farrington, Deputy Clerk

                         FOR THE COURT - BY DIRECTION

                         A true copy
                         Test
                         Clerk, U. S. Court of Appeals, Fifth Circuit

DIS-4
                         By _Claudia Farrington_
                            Deputy    3/5/01
Fee_____                 New Orleans, Louisiana
Process___
X Dktd____
__CtRmDep
__Doc.No.__
```

*Copy*

# SHER GARNER CAHILL RICHTER
# KLEIN McALISTER & HILBERT, L.L.C.

Twenty-Eighth Floor
909 Poydras Street
New Orleans, Louisiana 70112-1033
http://www.shergarner.com

| | | | |
|---|---|---|---|
| Leopold Z. Sher (1) | Darnell Bludworth (2) | Edward J. Rantz, Jr. | (1) Law Corporation |
| James M. Garner (2) | Martha Y. Curtis | Alvin Charles Miester, III | (2) Member of Louisiana and |
| Elwood F. Cahill, Jr. | Neal J. Kling | Brandon A. Brown | Texas Bars |
| Richard P. Richter | Karen T. Holzenthal | J. Michael Monahan, II | (3)Board Certified Tax |
| Steven I. Klein (1)(3) | D. S. Watkins Lawrence (2) | | Attorney Louisiana Board |
| Thomas P. McAlister (2) | Keith A. Kornman | | of Legal Specialization |
| Peter L. Hilbert, Jr. (1) | John T. Balhoff, II | | |
| Marie A. Moore | William J. Furnish, Jr. | | All Others Louisiana Bar |
| Debra Fischman Cottrell | Deborah M. Aymé | Of Counsel: | |
| Robert P. Thibeaux | Michael H. Pinkerton | Timothy B. Francis | |

mcurtis@shergarner.com
Direct Dial: (504) 299-2111
Direct Fax: (504) 299-2311

(504) 299-2100
FAX (504) 299-2300

July 14, 1999

**VIA FACSIMILE 728-4690**
Arthur A. Crais, Jr., Esq.
Shell Oil Company
P.O. Box 60193
New Orleans, LA 70160-0193

> Re: *In the Matter of Falcon Inland, Inc. and Falcon Services Company, Inc. of Delaware*
> U.S.D.C., Eastern District of La., No. 97-0360, Sect. J, Mag. 2
> Our Reference:      00520.0302

Dear Mr. Crais:

This firm represents DiLo, Inc. We have been asked to respond to your correspondence of April 7, 1999 directed to The Dia-Log Company at an address in Houston. To the extent your correspondence seeks defense and indemnity from DiLo, Inc. ("DiLo") for Shell Western E&P, Inc. ("Shell E&P") for the above matter, DiLo must deny your request. DiLo's reasons for denial include, but are not limited to, the following outlined below.

## I. THE BLANKET ORDER AT ISSUE WAS AN EXECUTORY CONTRACT ASSUMED BY WEDGE WIRELINE.

Shell E&P bases its claim for defense and indemnity on a blanket order which Shell E&P contends was extended to September 30, 1997. See April 13, 1999 correspondence from James E. Blazek. However, on January 15, 1996, The Dia-Log Company sold certain assets and properties



# SHER GARNER CAHILL RICHTER
## KLEIN MCALISTER & HILBERT, L.L.C.

Arthur A. Crais, Jr., Esq.
July 14, 1999
Page - 2 -

to WEDGE Wireline, Inc. in an Asset Purchase Agreement. After the Asset Purchase Agreement was executed, The Dia-Log Company changed its name to DiLo, Inc.

Because Shell E&P contends the blanket order at issue was extended to September 30, 1997 or past the past the closing date of the Asset Purchase Agreement on January 15, 1996, it is therefore an assumed obligation under an executory contract assumed by WEDGE Wireline under the terms of the Asset Purchase Agreement for which DiLo, Inc. has no responsibility.

## II.   PREJUDICIAL LATE NOTICE

Even if the blanket order at issue applied to DiLo, which is denied as stated above, DiLo has been prejudiced by the untimeliness of Shell E&P's request for defense and indemnity which still has never been directed to DiLo itself. The blanket order on which Shell E&P now relies was produced by DiLo in its discovery responses in this case on May 12, 1997. You have been aware of the above litigation at least since September 3, 1997 when you moved to enroll yourself as co-counsel for Falcon Inland, Inc. and Falcon Services Company, Inc. of Delaware. Mr. Rachal filed a third-party complaint against Shell Oil Company on November 12, 1997. Mr. Rachal then filed a First Supplemental and Amending Third-Party Complaint seeking to substitute Shell E&P for Shell Oil Company on February 20, 1998.

Therefore, at the latest, Shell E&P knew of Mr. Rachal's claims against it and had the blanket order at issue by February 1998. Nevertheless, Shell E&P did not seek to secure defense and indemnity until more than a year later. At the time of your April 7, 1999 correspondence, trial was scheduled for May 10, 1999, a little more than a month away. Although we understand trial has now been continued to July 22, 1999, most of the original pretrial deadlines remained in place, some of which had already passed by the time of your April 7, 1999 correspondence. Shell E&P's request for indemnity so long after the claim had first been made against it and so close to the trial date and the pretrial deadlines is sufficient to relieve DiLo of any defense and indemnity obligations under the blanket order, assuming any existed.

Moreover, DiLo would not be responsible for any defense costs incurred before a valid tender and would not be responsible for any defense costs incurred by Shell E&P's attorneys for the other entities they represent in the litigation including Falcon Inland, Inc. and Falcon Services Company, Inc. of Delaware.

# USHER GARNER CAHILL RICHTER
# KLEIN MCALISTER & HILBERT, L.L.C.

Arthur A. Crais, Jr., Esq.
July 14, 1999
Page - 3 -

## III.    THE INDEMNITY PROVISION IS UNENFORCEABLE AS A MATTER OF LAW.

### A.    Indemnity Provisions Must Provide Fair Notice.

Even assuming the blanket order applies to DiLo and that Shell E&P's late notice does not obviate any duty thereunder, the indemnity provision is nevertheless unenforceable as a matter of law. The blanket order at issue is between The Dia-Log Company at a Houston address and Shell E&P at a Houston address for all operations nationwide that it covers.

Under Texas law, to relieve a party for its own negligence, an indemnity provision must provide fair notice, i.e., must meet the express negligence rule and be "conspicuous." Whether a provision satisfies the conspicuousness requirement is a question of law for the court. A conspicuous provision is "so written as to be noticed by a reasonable person. . . . This means that something must appear on the face of the [document] to attract the attention of a reasonable person when he looks at it." Ling & Co. v. Trinity Sav. & Loan Ass'n, 482 S.W.2d 841, 843 (Tex. 1972).

Texas adopts the Uniform Commercial Code's definition of conspicuousness:

> A term or clause is conspicuous when it is written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous."

Tex. Bus. & Com. Code Ann. § 1.201(10); see also Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 511 (Tex. 1993) ("For example, language in capital headings, language in contrasting type or color, and language in an extremely short document, such as a telegram is conspicuous.").

In Dresser, the Texas Supreme Court found indemnity language not conspicuous when it was "located in the back of a work order in a series of numbered paragraphs without headings or contrasting type." Id. at 511. It noted one of the contracts at issue had "eighteen uniformly printed and spaced paragraphs" while the other had "nine uniformly printed and space[d] paragraphs." Id. at 511 n.6. In both contracts, the provisions were printed on the reverse side of the contract with a provision incorporating such terms on the front side. The court further noted that the contracts were "not so short that every term in the contracts must be considered conspicuous." Id. at 511. The Texas Supreme Court therefore held that the indemnity provisions "are without effect since they do not comply with the fair notice requirement of conspicuousness." Id.

Law Offices of
# SHER GARNER CAHILL RICHTER
# KLEIN McALISTER & HILBERT, L.L.C.

Arthur A. Crais, Jr., Esq.
July 14, 1999
Page - 4 -

After Dresser, the Texas Supreme Court found another provision not conspicuous in Littlefield v. Schaefer, 955 S.W.2d 272 (Tex. 1997). The top line of the provision in that case was bold-faced, centered, and capitalized. Id. at 276 (Baker, J., dissenting). The headings were in 28 characters per inch with the main text in 38 characters per inch. Id. at 274. The language in the body of the provision at issue was smaller than other language in the form and had no contrasting type or color. Id. at 275. The Texas Supreme Court held that "[t]he fact that the release heading has a larger font size than the release language does not, alone, make the release conspicuous." Id.

Similarly, in K&S Oil Well Service, Inc. v. Cabot Corp., 491 S.W.2d 733 (Tex. App.-Corpus Christi 1973), the Texas appellate court found an indemnity provision did not satisfy the conspicuousness requirement. In that case, the indemnity provision

> was located on the reverse side of a "Sales Order." It was under a heading "Terms and Conditions." It was in the fourth paragraph entitled "Warranty." Completely unrelated terms surrounded it.

Id. at 738. The K&S court found the indemnity provision "hidden" and held that it "was not conspicuous as a matter of law so as to import fair notice to the indemnitor." Id.

Likewise, in U.S. Rentals, Inc. v. Mundy Service Corp., 901 S.W.2d 789 (Tex. App.-Houston 1995), the Texas appeals court found that an indemnity provision did not satisfy the conspicuousness requirement. In that case, the indemnity provision was under "ADDITIONAL TERMS AND CONDITIONS" following a heading, "LIABILITY FOR DAMAGE TO EQUIPMENT, PERSONS, AND PROPERTY." Id. at 790. The court noted it was "the seventh of fifteen provisions on the reverse side of the contract. In each provision, the heading and text were printed in the same typefaces." Id. at 791. Because "[t]he headings and text of all fifteen [provisions] were printed in the same respective sizes and types," the Mundy court held, "the indemnity provision was no more visible than any other provision on the back of the page." Id. at 792.

The court concluded that "indemnity provisions set forth among unrelated terms and conditions on the backs of forms, and printed without distinguishing typeface, have generally been held not to be conspicuous." Id. at 793 (citing Safeway Scaffold Co. v. Safeway Steel Prods., 570 S.W.2d 225, 228 (Tex. App.-Houston [1st Dist.] 1978) (provision on back of rental form, surrounded by unrelated terms in small and light type was inconspicuous); and K&S)). Notably, the Mundy court rejected the argument that because the parties were sophisticated a different standard should apply as to conspicuousness, holding that "the conspicuousness of an indemnity agreement be established by objective factors on the face of the agreement, rather than to vary according to the

# ⬤SHER GARNER CAHILL RICⓍTER
# KLEIN MCALISTER & HILBERT, L.L.C.

Arthur A. Crais, Jr., Esq.
July 14, 1999
Page - 5 -

subjective sophistication and experience of each party against whom the agreement may be asserted." Id. at 792.   The court therefore refused to enforce the indemnity provision.

### B.   Placement and Form of Indemnity Provision in Blanket Order

The blanket order at issue appears to be 26 pages.  The first 6 pages appear to be manuscript pages; the 7th page appears to be a pre-printed form which allegedly contains the indemnity provision at issue.  The 7th page appears to be double-columned with several lines of text in both columns.  The individual numbered headings appear to be in the same font as the rest of the text of the page except for the two major subheadings.  The 16 sections on that page appear to be uniformly printed and spaced on the form and contain 24 characters per inch.  The four paragraphs in section 11 to which you refer in your April 7, 1999 correspondence appear to be not in any larger type font, different type style, or color from the language in the other 15 sections.

Following the preprinted form is an Attachment "1" of 9 more pages of manuscript text.  Following Attachment "1" appears to be an Attachment "A" of 11 manuscript pages regarding "Contractor Minimum Safety Requirements."   There also appears to be a "Contractor Acknowledgment" signed by Mr. C.G. Holloway for The Dia-Log Company on September 24, 1993 indicating receipt and acknowledgment of the safety requirements.

Thus the indemnity provision at issue fails to satisfy the fair notice requirement and is unenforceable as a matter of law.

Thus DiLo, Inc. denies Shell E&P's request for defense and indemnity in the above case for the non-exclusive reasons outlined above.  This denial is based on the information currently available to DiLo.  If you have other information which you would like DiLo to consider, please contact us.

Cordially,

Martha Y. Curtis

cc:   James E. Blazek, Esq./James T. Rogers III, Esq. (via facsimile 566-0210)
      James M. Garner, Esq.

06/06/01  WED 17:29  [TX/RX NO 6720]